```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAUL GRIMMETT,                                              :
                                                            :
                            Plaintiff,                      :
                                                            :     15-CV-7351 (JPO) (SN)
            -v-                                             :
                                                            :     OPINION AND ORDER
CORIZON MEDICAL ASSOCIATES OF NEW                           :
YORK; ALLAN MATTHEW, DDS; DR.                               :
SHARMA, MD, SITE MEDICAL DIRECTOR                           :
OF NEW YORK CITY DEPARTMENT OF                              :
CORRECTIONAL SERVICES, MANHATTAN                            :
DETENTION CENTER,                                           :
                                                            :
                            Defendants.                     :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Paul Grimmett, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that he was denied dental care while incarcerated at Manhattan Detention Center ("MDC"). Specifically, he alleges that Allan Matthew, D.D.S., and Dr. Sharma, M.D., the MDC Site Medical Director, were deliberately indifferent to Grimmett's serious dental condition and related ear pain and hearing loss in violation of the Eighth and Fourteenth Amendments to the United States Constitution. He further alleges municipal liability under § 1983 on the part of Corizon Medical Associates of New York ("Corizon"). Grimmett also raises state medical malpractice and negligence claims against all Defendants. Defendants move to dismiss Grimmett's second amended complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

I.  Background

    A.  Procedural History

Grimmett filed this lawsuit in September 2015. (Dkt. No. 2.) He filed a first amended

complaint ("FAC") in April 2016 and named as defendants the City of New York, Corizon, Dr. Matthew, Dr. Sharma, and Acting MDC Warden Cooper. (Dkt. No. 38.) On August 12, 2016, the Honorable Analisa Torres dismissed the FAC, but granted Grimmett leave to file a second amended complaint against Dr. Matthew and Dr. Sharma. (Dkt. No. 56.)

On November 18, 2016, Grimmett filed his SAC against Defendants Corizon, Dr. Matthew, and Dr. Sharma. (Dkt. No. 61.) The SAC asserts claims under § 1983 for deliberate indifference to Grimmett's serious medical needs in violation of the Eighth and Fourteenth Amendments, along with state medical malpractice and negligence claims. Defendants have moved to dismiss the SAC pursuant to Rule 12(b)(6). (Dkt. No. 73.) The motion is fully submitted. The case was reassigned to the undersigned on April 5, 2017.

### B. Plaintiff's Claims[1]

Grimmett was first incarcerated at MDC in June 2013. (SAC ¶¶ 2, 9, 11.) On July 2, 2013, Grimmett had a dental appointment with Dr. Matthew. (*Id.* ¶ 27.) During this appointment, Grimmett told Dr. Matthew that, before he was arrested, his personal dentist had recommended "a full mouth extraction" of all his teeth due to preexisting dental problems. (*Id.* ¶¶ 8, 28.) Grimmett alleges that, at the time of this appointment, he had "swollen gums that were already infected," along with "dental caries and badly decayed teeth," and that Dr. Matthew saw these conditions. (Dkt. No. 83 at 36.) Dr. Matthew examined Grimmett's mouth and told him he

---

[1] The following facts are taken from Grimmett's SAC and opposition brief and are accepted as true for purposes of this motion. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering facts alleged in affidavit submitted by *pro se* plaintiff in opposition to motion to dismiss); *Flores v. N.Y.C. Human Res. Admin.*, No. 10 Civ. 2407, 2011 WL 3611340, at *1 n.1 (S.D.N.Y. Aug. 16, 2011) ("Because of [plaintiff's] *pro se* status, . . . the Court may consider factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint . . . ."). Grimmett has also attached several exhibits to the SAC, which were filed under seal because they contain Grimmett's medical and other confidential personal information. (Dkt. No. 64.) The Court has considered these exhibits to the extent that they are referenced in or integral to the SAC. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

2

"would put [him down] for all of the necessary work that needs to be done." (SAC ¶ 29; *see also* Dkt. No. 83 at 35; SAC Ex. G at 56.) Grimmett alleges that Dr. Matthew intentionally omitted the real facts of Grimmett's condition from Grimmett's medical records so that Dr. Matthew could avoid providing further treatment. (Dkt. No. 83 at 36.) The medical records from the initial visit do not mention infection or the need for extraction, though they do indicate "swollen gums" and some "bone loss." (SAC Ex. G at 56.) Grimmett alleges that Dr. Matthew never scheduled the follow-up treatment he promised. (SAC ¶ 147.)

After the initial appointment, Grimmett sent "numerous" dental slips to Dr. Matthew and to the dental department but received no response for approximately three months. (*Id.* ¶ 30.)

On October 5, 2013, Grimmett went to the infirmary because he was in "agonizing pain from an abscess in [his] mouth." (*Id.* ¶¶ 31-32.) A nurse directed him to Dr. Sharma. (*Id.* ¶ 34.) When Grimmett asked for amoxicillin and ibuprofen to help control the pain and treat the infection, Dr. Sharma told him that there was no one available to administer any medication. (*Id.* ¶¶ 35-36.) Grimmett then asked Dr. Sharma to examine his mouth, but the doctor refused. (*Id.* ¶ 37.) Grimmett described his condition to Dr. Sharma, who replied that he would have to report to sick call to be seen. (*Id.* ¶ 38.) Grimmett alleges that, despite the doctor's representations to the contrary, Dr. Sharma in fact had "all the keys to the cabinet to provide 'emergency medication.'" (Dkt. No. 83 at 47.)

Two days later, on October 7, 2013, Grimmett went to sick call and explained to a physician assistant ("PA") that his mouth was in "agonizing pain" and that he could not "hear anything out of [his] left ear." (SAC ¶¶ 39-40.) He explained that he had been experiencing that level of pain for the past two days. (*Id.* ¶ 46.) The PA told Grimmett that he had a tooth abscess, prescribed him medication for the pain and infection, and generated dental and ENT referrals.

3

(*Id.* ¶¶ 42-44; *id.* Ex. G at 59.)

Grimmett went back to sick call the next day because he had not received his pain medication (SAC ¶¶ 47-48), and again on October 11 because the ibuprofen and penicillin were not helping his toothache (*id.* ¶¶ 49, 52). He was prescribed a new regimen of medications, which included Augmentin and Tylenol with codeine. (*Id.* ¶¶ 53-55; *id.* Ex. G at 61-62.)

On October 24, 2013, Mariane Molfetas, D.D.S., a non-party to this lawsuit, extracted two of Grimmett's teeth. (SAC ¶ 64; *id.* Ex. G at 70.) On December 13, 2013, a hearing aid for Grimmett was approved (SAC ¶ 68; *id.* Ex. G(2) at 7), and he received the hearing aid on January 21, 2014 (SAC ¶ 73; *id.* Ex. G(2) at 11-13). Grimmett was then transferred to Downstate Reception Center, where a nurse told him that he could have a full extraction once he got to his "primary facility." (SAC ¶¶ 75, 78.) On September 12, 2014, after Grimmett was transferred to Auburn Correctional Facility, where he would stay for at least six months, an oral surgeon extracted his lower teeth. (*Id.* ¶¶ 82, 83, 90-93.) A month later, after Grimmett had completed a course of amoxicillin for an infection in his upper gums, his upper teeth were removed. (*Id.* ¶¶ 94-95.) As of May 2015, Grimmett was being fitted for dentures. (*Id.* ¶¶ 103-04.)

## II.     Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

4

When evaluating whether a complaint meets these requirements, courts "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Additionally, a complaint "filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. Discussion

### A. Deliberate Indifference to Serious Medical Needs

Grimmett brings claims for deliberate indifference to his serious medical needs under the Eighth Amendment, which applies to convicted prisoners, and the Fourteenth Amendment, which applies to pretrial detainees under state custody. *See Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29 (2d Cir. 2017). Under either provision, a plaintiff must satisfy a two-prong test to make out such a claim. First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). Second, the defendant must have acted with deliberate indifference, or a "sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). The Court addresses each prong in turn.

#### 1. Serious Deprivation of Adequate Medical Care

For a medical condition to be sufficiently serious under the first prong, it must be "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance*, 143 F.3d at

5

702 (quoting *Hathaway*, 37 F.3d at 66); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance*, 143 F.3d at 702)). In the specific context of dental care, the Second Circuit has held that "[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance*, 143 F.3d at 703 (citations omitted); *see also id.* (finding a serious medical condition where plaintiff "alleged that, as the result of the defendants' actions, he suffered extreme pain, his teeth deteriorated, and he has been unable to eat properly"). When an inmate alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," a court should focus on "the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). Thus, even though "[p]risoners are not entitled to a 'perfect plan for dental care,'" *Alster v. Goord*, 745 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)), tooth decay and cavities may qualify as serious medical conditions, *see Harrison*, 219 F.3d at 137.

Here, Grimmett alleges that he suffered from "swollen gums" that were "infected," along with obvious tooth decay and bone loss (Dkt. No. 83 at 36)—dental conditions "that tend[] to cause acute infections, debilitating pain and tooth loss if left untreated." *Harrison*, 219 F.3d at 137; *see id.* ("Because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our

6

case law."). He further alleges that the delay in appropriate dental care exacerbated his injuries or increased the risk of future harm. *See Smith*, 316 F.3d at 185-86. Specifically, Grimmett alleges that the delay in care "allowed the infection in [his] gums to fester and develop into a full blown painfully agonizing oral abscess" (Dkt. No. 83 at 37), and resulted in hearing loss (*id.* at 34, 40).

Accordingly, Grimmett has satisfied the first prong: "the alleged deprivation of adequate medical care," by both Dr. Matthew and Dr. Sharma, is "sufficiently serious." *Spavone*, 719 F.3d at 138.

### 2. State of Mind

Under the second prong of the deliberate indifference standard, a plaintiff must show that a defendant acted with a sufficiently culpable state of mind. Until recently, the analysis under this prong was identical whether the claim was brought under the Eighth Amendment or the Fourteenth Amendment. *See Darnell*, 849 F.3d at 33. In February 2017, however, following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and while the parties were briefing the instant motion, the Second Circuit held that the analysis differs depending on whether the inmate is a convicted prisoner or a pretrial detainee. *Darnell*, 849 F.3d at 35.[2] In particular, under the Eighth Amendment, deliberate indifference is equivalent to recklessness "according to a more exacting subjective standard akin to that used in the criminal context, which would require proof of . . . subjective awareness" on the part of the defendant. *Id.* at 32 (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)). Deliberate indifference under

---

[2] "Although *Darnell* involved a challenge to conditions of confinement, the holding of the decision is broad enough to extend to medical deliberate-indifference claims." *Feliciano v. Anderson*, No. 15 Civ. 4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017); *see Darnell*, 849 F.3d at 33 n.9 ("[D]eliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.").

the Eighth Amendment, therefore, means that a prison official "appreciate[d] the risk to which a prisoner was subjected." *Id.* at 35. In contrast, after *Darnell*, a plaintiff suing under the Fourteenth Amendment is required to show only that the prison official acted with objective recklessness, or that the defendant "knew, or should have known" that "an excessive risk to health or safety" would result. *Id.*; *see also Lloyd v. City of New York*, No. 14 Civ. 9968, 2017 WL 1207838, at *9 (S.D.N.Y. Mar. 31, 2017). As before, however, more than negligence is required to hold a defendant liable for violating either constitutional provision. *Darnell*, 849 F.3d at 36.

It is unclear from the SAC whether Grimmett was a pretrial detainee or a convicted prisoner during the relevant time period. Under either the Eighth or Fourteenth Amendment, however, Grimmett has made out a claim against Dr. Matthew but has failed to state a claim against Dr. Sharma.

**Dr. Matthew.** According to Grimmett, Dr. Matthew deliberately refused to provide treatment for three months, despite the fact that Grimmett sent "numerous dental slips to [Dr. Matthew] and to the dental department." (SAC ¶ 30.) Although the three-month delay on its own may not be enough to allege deliberate indifference, Grimmett has included additional allegations—beyond those recited in the FAC—to sufficiently plead that Dr. Matthew also acted "with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. In particular, Grimmett alleges that Dr. Matthew "omit[ted] the real facts of plaintiff's condition [from his medical records] so that he would not have to address plaintiff's serious dental condition" (Dkt. No. 83 at 36), and that Dr. Matthew "omitted [information] that would have placed plaintiff at a level to receive required treatment" (*id.* at 38; *see also* SAC ¶ 147 ("Plaintiff was never scheduled for a follow up by [Dr. Matthew] . . . . [F]urthermore, when plaintiff wrote to [Dr.

8

Matthew], plaintiff never received a response . . . .")). Grimmett therefore has alleged facts that, even under the subjective recklessness standard of the Eighth Amendment, plausibly plead that Dr. Matthew was deliberately indifferent to Grimmett's serious medical needs. Accordingly, Defendants' motion to dismiss Grimmett's claim against Dr. Matthew is denied.

*Dr. Sharma.* Grimmett alleges that Dr. Sharma was deliberately indifferent when Grimmett reported to sick call on October 5, 2013, in agonizing pain from an abscess in his mouth (SAC ¶¶ 31-38), and that Dr. Sharma refused to examine Grimmett's mouth or prescribe any medication, despite the fact that Dr. Sharma had "all of the keys to the cabinet" (Dkt. No. 83 at 47). Dr. Sharma instead told Grimmett that there was nothing he could do, and that Grimmett should sign up for sick call. (SAC ¶ 38; Dkt. No. 83 at 43-44.) Indeed, Grimmett went to sick call two days later, where he was seen by a PA who prescribed him medication for the pain and infection and generated dental and ENT referrals. (SAC ¶¶ 39, 42, 44, 48; *id.* Ex. G at 58-59.) This two-day delay in treatment on its own is insufficient to plead recklessness, and Grimmett's allegations that Dr. Sharma "knew, or should have known" that "an excessive risk to health or safety" would result, *Darnell*, 849 F.3d at 35, are conclusory. *See Feliciano*, 2017 WL 1189747, at *13 ("Instead of seeing [plaintiff] immediately, [the defendant doctor] instructed him to rinse out his eye with cold water and to sign up for sick call in the morning. Although [plaintiff] did not receive immediate medical care, this fact is insufficient to establish that [the doctor] knew, or should have known, that the brief delay put [plaintiff's] health in jeopardy." (citation omitted)). Furthermore, although Grimmett may have preferred to be seen by a doctor rather than a PA during sick call (SAC ¶ 143; Dkt. No. 83 at 47-48), "mere disagreement over the proper treatment does not create a constitutional claim," *Chance*, 143 F.3d at 703. At the most, therefore, Grimmett has alleged that Dr. Sharma was negligent. Because negligence alone is

9

insufficient to make out a deliberate indifference claim even under the Fourteenth Amendment, *see Darnell*, 849 F.3d at 36, Grimmett's § 1983 claim against Dr. Sharma is dismissed.

### B. Municipal Liability Against Corizon Medical Associates[3]

Corizon, although a private entity, is treated as a municipal actor for purposes of this lawsuit. *See Bess v. City of New York*, No. 11 Civ. 7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("In providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of the municipality."). "It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a *respondeat superior* theory." *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2009) (quotations and citation omitted). There

---

[3] The SAC includes claims against Corizon, despite the fact that Judge Torres granted Grimmett leave to replead his claims only against Dr. Matthew and Dr. Sharma. The Court could dismiss these claims on this ground alone. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."); *see also Pagan v. N.Y. State Div. of Parole*, No. 98 Civ. 5840, 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002) (dismissing with prejudice new claims in an amended complaint that were outside the scope of the court's order granting the *pro se* plaintiff leave to amend). However, given Grimmett's *pro se* status, the Court declines to dismiss these claims solely because they exceed the scope of the leave granted. *See Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12 Civ. 974, 2015 WL 5729969, at *22 (S.D.N.Y. Sept. 30, 2015) ("Given Plaintiff's pro se status, and the Court's obligation to liberally construe pro se pleadings, the Court is hesitant to dismiss Plaintiff's [amended complaints] on this ground."); *see also Moriates v. City of New York*, No. 13 Civ. 4845, 2016 WL 3566656, at *2-3 (E.D.N.Y. June 24, 2016) ("For *pro se* litigants, broad leave to replead is generally appropriate, since they lack the legal acumen and experience to differentiate successful claims from unsuccessful ones.").

are four ways a plaintiff can allege a policy or custom:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Rodriquez*, No. 15 Civ. 3836, 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016) (quoting *Guzman v. United States*, No. 11 Civ. 5834, 2013 WL 5018553, at *3-4 (S.D.N.Y. Sept. 13, 2013)).

As in the FAC, Grimmett alleges in the SAC that Corizon "had an unwritten policy of avoiding high costs in detainee's medical bills," and that this policy is why Dr. Matthew and Dr. Sharma delayed Grimmett's access to a dentist for approximately three months. (*See* FAC ¶ 56; SAC ¶ 146.) "To state there is a policy," however, "does not make it so," and Grimmett has alleged no facts from which the Court can plausibly infer that Corizon had such an unwritten policy. *Shearman*, 2013 WL 311124, at *16; *see also Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (summary order) ("It has long been well-settled that 'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995))). In addition, the SAC lacks allegations that would allow the Court to infer that any such policy was the cause of Grimmett's alleged constitutional injuries. Although Grimmett alleges that Corizon's contract with the New York City Department of Correctional Services was terminated "due to a pattern of violations of detainee's Civil and Constitutional rights" (SAC ¶ 148; Dkt. No. 83 at 50), there is no indication that the termination was due to a policy of avoiding costs. The two press clippings that are attached to and

11

referenced in the SAC concern the inadequate treatment that one MDC inmate received and problems with Corizon employee background checks, respectively, but do not support Grimmett's contention that the company had an unwritten cost-cutting policy. (Dkt. No. 83 at 49-50; SAC Ex. I.)

Grimmett also alleges that Dr. Matthew and Dr. Sharma were "final decision makers" and were therefore granted municipal policymaking authority. (Dkt. No. 83 at 35, 48.) Even if Dr. Matthew and Dr. Sharma were "final decision makers" with respect to Grimmett's care, which is what Grimmett appears to allege, that allegation is insufficient to plead that they were final *policymakers* with regard to Corizon's billing policies. In particular, allegations that Dr. Matthew and Dr. Sharma chose a treatment plan for Grimmett that would keep costs down is not enough to plausibly plead that they possessed final authority to establish pricing policy. *See Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 427 (2d Cir. 2004) (summary order) ("Even if [the defendant] was the *decisionmaker* with regard to [the plaintiff's] transfer, that does not establish that she had the authority to set the policy authorizing involuntary employee transfers."). Accordingly, even accepting Grimmett's factual allegations as true and liberally construing his pleadings, the Court concludes that Grimmett has failed to plausibly allege the existence of a policy or custom. Accordingly, his § 1983 claim against Corizon is dismissed.

### C. State Law Claims

Liberally construed, the SAC also asserts claims against Defendants under New York law for medical malpractice and negligence. (SAC ¶ 145; Dkt. No. 83 at 51.) Defendants do not contest that the Court has supplemental jurisdiction over Grimmett's state law claims under 28 U.S.C. § 1367; instead, they request that the Court decline to exercise supplemental jurisdiction on the ground that Grimmett has failed to state a federal claim under § 1983. (Dkt. No. 77 at 16;

Dkt. No. 86 ¶ 23.) However, because the Court has not dismissed all of Grimmett's federal claims, it will retain supplemental jurisdiction over his state law claims. *See, e.g.*, *Rodriguez v. Cnty. of Westchester*, No. 15 Civ. 9626, 2017 WL 118027, at *11 (S.D.N.Y. Jan. 11, 2017). Defendants have not moved to dismiss Grimmett's medical malpractice or negligence claims on their merits. Accordingly, Defendants' motion to dismiss Grimmett's state law claims on jurisdictional grounds is denied.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to terminate the motion at Docket No. 73.

SO ORDERED.

Dated: May 24, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*